1842.

Catlin
v.
Valentine.

---

### CATLIN and others *vs.* VALENTINE.

The occupation of a building, in a city, as a slaughter house is prima facie a nuisance to the neighboring inhabitants, and may be restrained by injunction. And a general answer of the defendant denying that a slaughter house is a nuisance, is not sufficient to authorize the dissolution of an injunction restraining him from using his building as a slaughter house.

To constitute a nuisance, it is not necessary that the noxious trade or business should endanger the health of the neighborhood. It is sufficient if it produces that which is offensive to the senses and which renders the enjoyment of life and property uncomfortable.

THIS was an appeal from an order of the vice chancellor of the first circuit denying the defendant's application to dissolve an injunction. The bill was filed by certain owners of property in the city of New-York, on the east side of the second avenue, to restrain the defendant from erecting a slaughter house at the corner of that avenue and fifth street, and from slaughtering any cattle or other animals at that place, or permitting them to be slaughtered there. The injunction was granted ex parte, before the building erected for a slaughter house was completed, and soon after it was commenced ; but it was afterwards so modi-

May 3.

1842.

Catlin
v.
Valentine.

fied as to permit the defendant to proceed with the erection of his building, and only restraining him from using or permitting it to be used as a slaughter house. The defendant, by his answer, insisted that he intended to use the slaughter house in such a manner that it would not be a nuisance to the complainants, or to the other inhabitants of the neighborhood. And on that answer he applied to dissolve the injunction absolutely ; which application the vice chancellor denied, and directed the costs thereof to abide the event of the suit.

*Geo. Wilson,* for the appellant.

*D. P. Hall & H. P. Edwards,* for the respondents.

THE CHANCELLOR. The situation of the defendant's building in reference to the dwellings of the complainants, as described in the bill and not denied by the answer, would prima facie render the occupation of such building for the purpose of slaughtering cattle there, a nuisance. And as there is no real necessity that such an offensive business should be carried on in this part of the city, where many valuable dwelling houses of the best kind are already erected and are continuing to be built, the vice chancellor was right in retaining the injunction until the hearing. The answer of the defendant that a slaughter house would not be offensive to the complainants is matter of opinion merely, and is not such a denial of the whole equity of the bill as to entitle the defendant to a dissolution of the injunction as a matter of course. To constitute a nuisance, it is not necessary that the noxious trade or business should endanger the health of the neighborhood. It is sufficient if it produces that which is offensive to the senses, and which renders the enjoyment of life and property uncomfortable. (*Rex* v. *Neil,* 2 *Carr. & Payne's Rep.* 485. *Rex* v. *White,* 1 *Burr. Rep.* 337.)

It is perhaps possible to carry on the business of slaughtering cattle, to a limited extent, in such a mannner as not to be a nuisance. But it is wholly improbable that any one

will subject himself to the necessary expense to enable him to do it in that part of the city, when the business can be carried on in the unsettled parts of New-York, or in parts of the city where property is less valuable, without the great cost and labor which would be requisite to carry it on where the defendant's buildings were being erected when this bill was filed. In a case which came before the house of lords, upon an appeal from Scotland, that court sustained the ad interim interdict of the court below, although the defendants, as in this case, denied that in the particular manner in which they intended to carry on their business it would be a nuisance to the neighboring inhabitants. (*The Burnt Island Whale Fishing Company* v. *Trotter*, 5 *Wils. & Shaw's Parl. Rep.* 649.) And in the more recent case of *Swinton and others* v. *Pedic*, (15 *Shaw & Dunl. Sess. Ca.* 775,) the lords of session in Scotland refused to discharge the ad interim interdict so far as to permit the experiment to be made whether a slaughter house could be erected, and conducted in such a manner as not to be a nuisance to the northern suburbs of Edinburgh, in the manner suggested by the defendant. The decision of the court in that case was substantially sustained upon appeal to the house of lords, in 1839. (*Maclean & Rob. Parl. Rep.* 1018, *S. C.*)

In this case the defendant, upon the final hearing, will have the opportunity to produce proofs to show that the slaughtering of cattle, at the place proposed, will not be offensive to the neighboring inhabitants, and injurious to them in the enjoyment of their property. Or an issue may be awarded to try that question, if either party thinks proper to apply for such an issue. But the order of the vice chancellor continuing the injunction, in this stage of the suit, must be affirmed with costs.